## D. D. Dewey *et al. vs.* Joseph Campau.

Under the third Article of the treaty of 1819 with the Chippewa Indians, a tract of land was reserved for certain members of the tribe; the section, or parcel of each reservee to be afterwards located in such manner as the President of the United States might direct. A certified copy of a map from the General Land Office, on which a certain section was designated as the tract of one of said reservees, is evidence of the due location of such section, according to the conditions of the treaty. The term "reservation," in said treaty, is equivalent to an absolute grant, and the title was conferred by the treaty, though not perfect until the location was made, which was necessary to give the grant identity.

The Revised Statutes of 1838 require that to deeds by husband and wife, of her real estate, there should be the acknowledgment of both, and the certificate should set forth that she *acknowledged* that she executed, etc. A certificate that she "stated," etc., is void.

A certificate of acknowledgment by husband and wife, under Revised Statutes of 1838, not showing affirmatively that the wife's acknowledgment was taken *separately* as well as apart from the husband, is void.

There is no law authorizing the acknowledgment of a deed, where the acknowledging officer is unacquainted with grantor's vernacular language, to be taken through a sworn interpreter.

Case reserved from Genesee Circuit Court.

By the Court, WILLSON, J.

This was an action of ejectment, to recover Section One of the Reservations, at and near the Grand Traverse of the Flint River, under the Treaty of Saginaw. The plaintiffs claim title thereto as the grantees of Taw-cum-e-go-qua, who claimed it by virtue of the third article of the treaty between the United States and the Chippewa Indians, held at Saginaw, Sept. 24th, 1819. On the trial below, the jury rendered a verdict for the plaintiffs. The defendants then moved that the verdict be set aside, and a new trial granted for divers reasons, and the

Circuit Judge reserved the questions of law arising upon the facts, for the opinion of this Court.

1. It is insisted that the Court erred in admitting in evidence the certified copy of a map from the Land Office, to prove the fact that the land in question had been set apart for Taw-cum-e-go-qua. And it is also insisted, that inasmuch as the treaty gave her six hundred and forty acres, to be located at or near the Grand Traverse of the Flint River, in such a manner as the President might direct, that the President must act personally in the matter.

We think the map was properly admitted in evidence. The location is, in itself, evidence that all the prerequisites had been complied with. A violation or neglect of duty on the part of the officers who made the location, cannot be presumed. A grant raises a presumption that all the prerequisites have been complied with. (*Polk's Lessee*, vs. *Wendell*, 5 *Wheat.*, 293; *Newman* vs. *Harris & Plummer*, 4 *How.* [*M.*], 522.)

A title in fee, under this clause of the treaty, passed, by this language, to the reservee. The term reservation was equivalent to an absolute grant. The title passed as effectually as if the grant had been executed. The title was conferred by the treaty; it was not, however, perfect until the location was made; the location was necessary to give it identity. The location was duly made, and thus the title to the land in controversy was consummated by giving identity to that which was before unlocated. (*Niles* vs. *Anderson*, 5 *How.* [*M.*], 383; 4 *How.* [*M.*], 555; *Doe* vs. *Coleman*, 4 *S. & M.*, 46; 10 *S. & M.*, 461; 27 *Miss. R.*, 267.) This doctrine is clearly laid down in the well-considered case of Wray *vs.* Doe, in the tenth volume of Smedes & Marshall's R., p. 461.

2. It is secondly insisted that the Court erred in admitting in evidence the record of the alleged deed from Kazhe-ah-sumq and his squaw Taw-cum-e-go-qua, as a valid conveyance

of her interest. The deed was given in 1841, and the record and acknowledgment are governed by the Revised Statutes of 1838 ; and unless in accordance therewith, the record is no evidence, and the deed itself, as that of a *feme covert*, is absolutely void. The Revised Statutes of 1838, page 258, section 11, provides, that when a husband and wife shall join in a deed for the conveyance of the real estate of the wife, as provided in the second section of this chapter, such deed shall be acknowledged by both the husband and wife ; and the acknowledgment of the wife shall be taken separately and apart from her husband, and she shall acknowledge that she executed such deed without any fear or compulsion of her husband.

. The deed of a *feme covert* conveying her interest in lands, which she owns in fee, does not pass her interest by the force of its execution and delivery, as in the common case of a deed by a person under no legal disability. But the law presumes that a *feme covert* acts under the coercion of her husband, unless by a separate acknowledgment, out of the presence of her husband, before some proper officer, duly authorized to take such acknowledgment. The deed of a *feme covert*, being void at common law, is a nullity, unless acknowledged in strict compliance with the statute. The acknowledgment as to her is a part of the deed. (2 *Kent Com.*, 150; 8 *Cow.*, 277; 12 *Pet.*, 345; *Sibley* vs. *Johnson*, 1 *Mann. R.*, 380; *Gillett* vs. *Stanley*, 1 *Hill*, 121.)

· The certificate of the Notary Public, who professed to take this acknowledgment, is manifestly defective. It does not appear by the certificate that Taw-cum-e-go-qua ever acknowledged the deed, upon her examination. The officer merely certifies, that she stated, through the said interpreter, etc. The word "stated" cannot be regarded as· equivalent to acknowledged. Stated, signifies told, recited ; whereas the word acknowledged means, received with approbation, owned

before authority. The certificate of the Notary should have shown affirmatively that all the requirements of the statute had been complied with. A *feme covert*, as was well said in the case of Sibley *vs.* Johnson, derives her power to convey her estate alone from the statute, and her act has no force independent from that given to it by the statute, which is an innovation on the common law, and the authority given is in derogation of it; and if the act is not done pursuant to the statute, it cannot prevail; not by the common law, for that does not permit it; not by the statute, for its requisitions have not been complied with.

The certificate of the Notary is also defective, in not showing, affirmatively, that the acknowledgment was taken separately, as well as apart from her husband. At first sight, this may seem to be an unnecessarily nice criticism upon the certificate. But an acknowledgment might be taken apart from the husband, and not beyond his immediate presence. Whereas, if the officer had certified that the acknowledgment was taken separately and apart from the husband, such language in the certificate would exclude the idea of personal presence on the part of the husband.

Courts have repeatedly held, that the statute in regard to conveyances by married women must be strictly complied with, and that they will not control or explain away the statute.

But the most palpable error on the face of the certificate is, that the Notary Public took the acknowledgment in a manner entirely unauthorized by law. There is no law authorizing the Notary to swear an interpreter, in a case of ackowledgment. It was, in fact, taking an acknowledgment by mere hearsay. This error is too manifest to admit of discussion. If the circumstance that the Notary did not understand the vernacular language of the squaw would justify the intervention of an interperter, no man would feel

safe in any property, a claim to which might be supported by proof so easily obtained. Such a practice would lead to endless frauds, and cannot be sanctioned.

There are several other reasons assigned for setting aside the verdict and granting a new trial, concerning which nothing need be said. As the deed under which the plaintiffs claim is a mere nullity, the motion must be granted.

Let it be certified to the Circuit Court for the County of Genesee, as the opinion of this Court, that the verdict should be set aside, and a new trial granted.

Present, WILLSON, GREEN, BACON, JOHNSON, MARTIN, and DOUGLASS, J. J.

There was no appearance for the plaintiffs.

*W. M. Fenton* and *J. V. Campbell*, for defendant, insisted : 1. That the President must act, in the matter of location of the reservee, in person. (2 *Land Laws, pp.* 67, 115, 191, 200, 214.) The certified copy of the map was not evidence. (8 *Serg. & Rawle*, 392; 6 *Ib.*, 13; 7 *Ib.*, 135.)

2. That the record was improperly admitted, as proving the deed from the Indian and wife. (*R. S.*, 1838, *p.* 258, § 11, *and p.* 261, § 31.) The deed of a married woman is a nullity, unless acknowledged in strict compliance with the statute. The acknowledgment as to her is a part of the deed. (2 *Kent Com.*, 150; 8 *Cow.*, 277; 12 *Pet.*, 345; *Sibley* vs. *Johnson, Manning R.*, 380; 1 *Hill*, 121.) It does not appear that the woman ever "acknowledged" the deed, nor that the examination was a "separate" one. There was no law authorizing an interpreter to be sworn in taking her acknowledgment. (7 *Cranch R.*, 290.)